I am mindful of the ten minutes. I'd like to reserve a few minutes at the end for any rebuttal. So I also know that this Court asked us to come prepared to discuss a few cases and some of the facts that are relevant with regard to what constitutes stockholder or partnership agreement. So that's what I intend to do. As I'm sure you all are well aware, this case turned on a single e-mail that was a hastily written one and that's the entire basis for liability in this case as we're doing today. And under the trial court's logic, if that e-mail had been written prior to the initial investment, there wouldn't be anything to have an action on. So does that e-mail constitute the required shareholder action or stockholder action under Delaware law as translated into the partnership context? Obviously we wouldn't be here if we thought it did. So the cases that are relevant to this, and really what's important is that in Delaware corporate law, which is where the Malone or Maloney v. Brinkhead case and its progeny were decided, that predominantly has to do with corporate issues. Here we're looking at a partnership issue. A partnership issue is a creature of the contract that created it. You have to look at that particular contract to look at the rights. It's not a corporate. And under this contract, excuse me. What's the best case, though, that distinguishes that there should be a difference for partnership contracts? Because you're trying to make a distinction here, is that right? I'm not making a distinction, only to point out that the laws in Delaware that cover corporate action are distinct from the laws that cover partnership action. They're analogous, but they are different. And that's just a creature of the statutory construct in Delaware. Malone versus, or I'm going to say Malone. I don't know if it's Malone or Maloney. Call it Malone. Under Malone, there was a contractual obligation to put in additional capital. No such obligation here. There was no requirement on Goodman to put in the other $500,000, correct? That's correct. It was purely voluntary. This was a second investment. He decided to make a second investment. And your client at the critical moment said, are you going to put in the other $500,000? Now, is that not a request for something that's not mandatory, that would require discretionary action? In certain contexts, yes, but not in the context that we're looking at that would require the analysis, the carve-out, really, that the Malone case and his progeny would talk about. That type of request for shareholder action is different than a simple, hey, do you want to invest or not? It has to do more with what are the rights of a limited partner under the agreement. The rights of the limited partners are defined very clearly in the limited partnership agreement. What case are you relying upon to make that distinction? Well, there are a number of cases that discuss – What's your best one? Probably Metro Communications versus Advanced Mobile Com. That discusses inter alia, and I'm looking at page 153 within that. I'm sorry, that – yeah, there's a statement. I'm not persuaded by Metro's argument that the regular request for capital calls made to the members of Fidelity Brazil constituted a request for owner action that would trigger each time a requirement, fiduciary tort, or any other legal principles to disclose all material facts. And it goes on at 156 to say, when the fiduciaries communicate with the beneficiaries in the context of asking the beneficiary to make a discretionary decision, such as whether to grant a proxy to vote yes or no on a particular matter, or to seek appraisal or accept merger consideration, the fiduciary has the duty to disclose all the material facts. And that's what – Go ahead. Excuse me. No, go ahead. That's what happened here, wasn't it? There was a request for the beneficiary, Goodman, to make a discretionary decision, to put in that additional $500,000 he wasn't required to do. Why doesn't that fit squarely with under this language in Metro? Because in that context, and I think it's fair to read this, especially when you look at the rest of the Metro case, where they discuss, at 158 in particular, All these other acts that might fit within this, they're illustrative. They're not exclusive or limiting. I understand, and I agree. I'm arguing that the Malone case and its progeny, this Metro communications case, all of these other cases, they are all in the context requesting unit holder vote, shareholder vote, things like this that are actually things that require a vote, a discretionary act that under the statute. But as you say, this is a partnership context. This is a partnership context. And you're not suggesting that because it's a partnership, this rule, we'll call it, from Metro and Malone doesn't apply, are you? I'm not saying it doesn't apply, but you have to look at the partnership agreement to decide what does the partnership agreement allow the partner to vote on. What is it that the partnership agreement says constitutes a voting requirement? What triggers that action? So in your view, what's the governing language in the partnership agreement that takes this outside Malone? I think that it appears in several places, most specifically sections 5.02 and 11.05 of the partnership agreement. Those appear in the record at ER 351, the pinpoint for 5.02 AI, which grants all authorities and rights to the general partner. That's very broad. It is very broad. And it needs to be read in the context of what does the limited partner then get to vote on? What are the rights of the limited partner under this? Well, the limited partner certainly has the discretion to determine whether or not to invest further funds. The partnership agreement doesn't purport to limit that discretion, does it? No, not at all. But here's the point. And I said this at the outset. The point is the trial court made this very clear. If this particular request for investment wasn't the second one, but was in fact the first one, the email that triggered this liability that the trial court found, using that logic, this would not be actionable. This would have fallen away. Because there wouldn't be this preexisting duty to disclose everything under the sun. That only exists. That's not what we have here. That's not, well, I understand that's not what we have. Are you telling us that unless the partnership agreement specifically calls out these are things that would require a discretionary decision, then Metro and Malone don't apply? In essence. You're saying it's got to be expressly called out in the partnership agreement to fall within this area of discretionary action? Yes, because partnership law is governed by the agreement itself. And what authority do you have for that proposition? I thought we cited it to it in our brief, Your Honor, and I apologize if I fumble for it. But maybe I can address that in a rebuttal and provide that. It seems, I'm curious, it seems like the district court didn't really address this, the question of what constitutes partnership action. Did you all raise it? Was it discussed below? It was raised in passing. The trial court sort of took it upon itself to decide that this was the basis for awarding this. We didn't think it amounted to partnership action, because partnership actions are typically, as every case that you asked us to look at, cited to. Every case is in the context of, hey, we need to get a proxy vote. Or, hey, in this partnership, I think it was Lonergan or one of these cases that said, hey, we need to get, yeah, Lonergan was an LP unit holder vote. We need to get the unit holders to vote on this. That was something they actually had to do, because that LP agreement required it. This is not that setting. These are not these facts. So do I understand, I just want to make sure I understand your argument. You argue that we should interpret partner action narrowly. Absolutely. As basically encompassing only actions that are specified under Delaware law or in an agreement that's triggering a partner vote. Yes. For the same reason that a partnership agreement can exclude liability for negligence and otherwise. Let me just ask you, how can you square this interpretation or action with the definition in Alessi versus Baraccia? Well, in that, in that, that was a buyback offer that was only to existing shareholders and they said it qualified as an existing, as a request for shareholder action. But that's, that's distinguishable because our case only relates to an email, an informal communication. That was a formal request for shareholder action to existing shareholders. Well, if I understand Alessi right, it was a request, you know, the Delaware court held that there was a request for shareholder action when the directors of a corporation offered a program to minority shareholders where they could buy or sell their shares at lower transaction costs. You know, this seems like this buy, sell program in Alessi was not identified under Delaware law or the Certificate of Incorporation, was it? Well, I, I, I don't know. It's a, it's a corporate entity and in that context it was also a sell agreement. There was no sell offered here. But you're, but taking your argument, it would have to have been defined either in the law or within the corporate certificate, I guess, of incorporation of what, what constitutes that. In the limited partnership agreement. Yes, I, I. So I'm just having trouble reconciling it. If you, you know, maybe on your rebuttal you can give me your best argument on that. Okay. Then I'll, I'll deserve. Counsel, before you leave, you don't have any time, but I'll give you a couple minutes for rebuttal. But I wanted to ask you, what section, what subsection in Section 11 were you citing to us for the limitation? Section 11 actually includes all of the. Those are the miscellaneous portions of the partnership agreement. I just wondered if there was one in particular that you were relying upon. Well, Section 11.05 in particular, and the subsections there, A and, and I believe A is the one that reserves all sorts of rights to the general partnership. Then it has a list of the types of things that the limited partners would be able to vote on, and only those things. Like if you look at, at, in particular Section 6.01, it tells you these are the only things the limited partners get to vote on. Section 11.05 tells you which things those are. All right. I get it. Thank you. Good morning, Your Honors. May it please the Court. Jeffrey Ingerman for Plaintiff Appellee Albert Goodman. The trial court here promptly found that Doman, as the general partner, was liable to Goodman for breaching his fiduciary duty of loyalty that he owed to Goodman as a limited partner by concealing material facts and by not speaking when he had a duty and obligation to do so. And the primary issue has to do with the second influx of $500,000 that Goodman invested into the fund. This was solely a discretionary decision, and it was improper and a breach of fiduciary duty for Doman to not disclose that he was the sole outside investor in the fund when Goodman was making that decision. What's your response to opposing counsel's argument that unless it's called out expressly in Delaware law or unless it is expressly itemized in the partnership agreement, then it shouldn't give rise to this exception? In Warner v. Miller Technologies, the Delaware courts held that limited partnership law allows for the restriction or elimination of fiduciary duties by contract. However, the parties to limited partnership must make the plain intent clear to limit the fiduciary duties by means of the partnership agreement. Otherwise, the court had stated, the court will apply fiduciary duties. You're saying there's no express limitation on the duty of loyalty in the partnership agreement, and therefore it applies in an undiluted form? Yes. If the partnership wanted to limit fiduciary duties, it had opportunity to do so in the agreement. And we would actually argue that the limited partnership agreement expressly recognizes that there can be breaches of fiduciary duty. I guess, you know, for Delaware law, it seems to contemplate shareholder action as encompassing only the very fundamental decisions, at least, you know, for the corporate side. And the examples cited by courts in that area are decisions whether to grant a proxy to vote yes or no on a particular matter, to seek appraisal or to accept merger considerations. I guess my question is, where are the limited partnership equivalents of these types of fundamental corporate decisions? And can you point us to Delaware limited partnership law or the fund partnership agreement in this case to give examples? Yes, Your Honor. First of all, the limited partnership agreement has provisions that provide for the vote or consent or approvals by the limited partner. And they are very simple. There's only five sections in the agreement that address that, none of which are applicable here. However, with respect to the limitations of liability in the agreement, I would direct you to Section 5.06, which describes the opportunity for the partnership to pay for premiums for breaches of fiduciary duty. There would be no reason for the partnership agreement to authorize the partnership to pay premiums for insurance to cover fiduciary breaches if there could be no fiduciary breaches by the directors or the general partner in this instance. Let me take another run at this. Assuming that partnership action only encompasses these types of fundamental decisions, what's your best argument as to why the action here, which was investing more money, is included? In this situation, Goodman was not obligated to invest additional money. And as a limited partner, the general fiduciary law holds, general partnership law holds that the general partner owes a fiduciary obligation of loyalty to the limited partners. I would actually bring to the case, we've searched for many cases, read through hundreds trying to find exactly what you asked us to do, and as opposing counsel probably recognizes, there aren't very many out there. However, I did come across a Does that make this suitable then for certification to the Delaware courts? I think that there is a case out there that actually does apply this to the extent that it can be decided here. The limitations that were listed in these cases always started with such as. They weren't exclusive lists. They weren't all encompassing lists of what constitutes partnership action. In the case of Anglo-American Security Fund versus SR Global International Fund, which is a chancery court decision from Delaware in 2006, the court found that, and this was a case involving breach of fiduciary duties against a general partner by limited partners in a hedge fund. In Anglo, the limited partners alleged that the general partner breached the fiduciary duties by misstating that he had retained $22 million in incentive fees in the capital account and that he had withdrawn those fees but did not inform the limited partners of that situation. They claimed that they had relied on that decision and the failure to disclose that information by staying in the fund was facts not to be true, however, at which point the plaintiffs switched course and decided that reliance was no longer required as is in this case because of the breach of fiduciary duty. However, in Anglo-American, the general partner never asked the LPs to contribute more funds or to withdraw funds from the partnership, from the fund. They stayed in the fund even after they knew that the partner had, the general partner had withdrawn those fees for over a year. It wasn't until later that they then decided they wanted to sue. However, in this situation, you do have a general partner asking a limited partner to contribute. Yeah, but I guess, now how do you square this with metro communications because it seems there that the Delaware court noted some of the policy reasons that a broad general definition of partnership action or partner action would not make sense. And the court specifically noted that it would undermine the effective operation of entities of, if every time the managers made a capital call to members, there was a judicially imposed requirement that they, and they quote, provide proxy statement like disclosures, end quote, because this would threaten to convert the duty to disclose to all, disclose all material facts in connection with the discretionary decision into what they called a pervasive across the board ruling governing all entity disclosures. So my question to you, isn't this policy equally at issue in this case and why should we impose a judicial requirement that general partners have to every time they seek additional capital from limited partners? Well, metro was different. In metro, the limited partners were obligated to make the capital contributions. In this case, Goodman was not required to do so. And you have the fiduciary duties that are owed by the general partner to the limited partner, not to disclose everything in terms of a proxy type statement, but at least to disclose those material facts that are relevant to the decision. And here, Goodman knew very well that it was very important to Goodman that he know how many investors there were and how big the fund was. There were multiple communications from Goodman to Goodman in that respect. And Goodman was intentionally misled by Goodman with respect to that information. Let me, I'm just trying to explore all possibilities. If we were to find that there was no request for partnership action here, would we need to remand for the district court to consider whether your client could prove a breach of fiduciary duty under this sort of higher standard including causation? Or do the district court's findings, effect, and conclusions of law already answer the remaining questions that would be left here? I believe the findings, effects, and conclusion of law do actually hold and address that issue. And how do you respond to the defendant's argument, I think it was at allowing this Delaware fiduciary duty claim to proceed conflicts with the federal securities law? I don't believe it conflicts at all. This was not a call for an outside individual to invest in a fund. But do you agree that this conduct at issue in this case is the same or sale of interest in a small hedge fund is covered by Section 10B? I do not, not with respect to an existing partner, limited partner within the fund. So do you see this as, see a distinction between a breach of fiduciary duty and what typically we see in federal securities as fraud on the market type cases? Yes, Your Honor. In this situation, again, there is no outside information that would be available to Mr. Goodman to be able to have a fair market price determined. There is no market in such a small hedge fund. All the information was held by Mr. Dillman. All right. Thank you, counsel. You've exceeded your time. Thank you. Two minutes for rebuttal. Thank you, Your Honor. So I was able to find the case in our brief. It's actually cited at, in our reply brief on page 7. It's Elf Atikam, North America. It's a case in which America Inc. v. Jafari, it's a Delaware Chancery Court case from 1999. And that does note that under the Delaware Limited Partnership Act, the basic approach is to permit partners to have the broadest possible discretion in drafting the partnership agreements and to furnish answers only in situations where the partners have not expressly made provisions in their partnership agreement. Read that last sentence. I'm sorry. I'm sorry. I was quoting. The quote starts at, the quote, basic approach is to permit partners to have the broadest possible discretion in drafting the partnership agreements and to furnish answers only in situations where the partners have not expressly made provisions in their partnership agreement. That's the end of the quote. It gives them the broadest in drafting. I'm sorry? In drafting their agreements. Yes. In drafting the agreement. And the agreement is the only contract that governs the investing relationship here. So what's in the contract is what governs. That's why you have to look at the contract rather than the Delaware corporate laws to decide what governs the rights and responsibilities of the partners. But how does that limit the duty of loyalty? Where does it provide that the terms of the partnership agreement while they instruct the relationship between the general and limited partners goes beyond that and actually serves as a limitation on this duty of loyalty? So that if it's not called out as something as of a discretionary nature within the partnership agreement, the exception opposing counsel is relying on doesn't apply. Well, it's a question of where you draw the line. Not every, not every, yeah, not every And we're looking for something that tells us where to draw the line, not attorney argument. And I understand that. And frankly, there isn't any case law that either side has found that draws us to a conclusion that can say this is absolutely the right answer. We can look at the cases like Metro Communications and some of the others and say they've given examples of what partnership action is. So what's your view on whether this should be certified to the Delaware court? Depends on how you decide. That's helpful. That's helpful. All right, counsel, you've exceeded your rebuttal time. Are there any more questions? All right. Thank you to both counsel for your arguments. Thank you. The case is argued and submitted for decision by the court.
judges: Rawlinson, Murguia, Gilstrap